Case 14-1288, USA v. Robby Harris. Oral argument not to exceed 15 minutes per side. Ms. Robinson for the appellant. Good morning, your honors. Good morning. May it please the court, Brandi Robinson of the Federal Defender Office in the Eastern District of Michigan, appearing on behalf of the appellant, Robby Harris. I would ask to reserve two minutes for rebuttal. All right. To be fair, a jury's decision against a criminal defendant must be based on its own findings and its own inferences drawn about the evidence in the case. It's really a fundamental principle of our system of justice that the opinions of the government's lay witnesses or any other witness shall not carry the day in terms of the jury being able to decide questions of guilt or innocence. But here, the government's witnesses offended this basic principle in violation of both rules of evidence 701B and the Sixth Amendment of the Constitution, and we ask the court, therefore, to remand this case for a new trial. Our argument is really based on three primary issues. One is that the testimony was not helpful to the jury's determination of a fact and issue as required by evidence rule 701B. Why is that? It seems like it would have been helpful. Well, the evidence that the witnesses were opining about really related to the letters that were available into the case, and as the court is aware, there were a number of letters written to a variety of different officials, some of them in very distinct handwriting, and then there were also letters sent to one of the witnesses herself, and that evidence was all available to the jury to review for itself. The jury was perfectly competent and capable of taking a look at that evidence and making a decision about whether or not the writings were the same and whether or not ultimately Mr. Harris was the one who committed the crime. But the thing that the witnesses in this case testified to really was it wasn't even that the signatures or the handwriting was similar. It was this is Mr. Harris's handwriting. And in that sense, it embraced the ultimate question, but it also, as I said, was not helpful to the trier of fact because the jury was perfectly capable of reaching its own conclusions on that point. And so that's my main response to that question, Judge Sutton. But Ms. Hiller actually was handed some of these prior letters directly from your client, right? I mean, he sent her a couple of love letters. Well, the interesting thing about that, Judge Gilman, is that even by Ms. Hiller's own testimony, the handwriting in the love letters that she received from my client were very remarkably different from the handwriting that was really part of the letter that was mainly at issue, and that was the letter to Congresswoman Miller. So in one sense, she arguably didn't have the personal knowledge of that particular brand of handwriting to even offer the testimony, and that's a different foundational issue under 701A. But you are correct. She did receive certain letters from our client. But at the end of the day, because this is so closely bound with the ultimate issue, I think this is still a tricky area for the government to tread in, and I think that's ultimately why, in the first instance, Judge Hood ended up sustaining one of the defense objections to this line of testimony because it went into an opinion on the ultimate fact. But, I mean, we've got cases that say that lay witnesses who compare handwriting is admissible, don't we? I would agree, and that line of cases really relies on Rule 901. The government has cited to a number of cases in its brief that are from not within the Sixth Circuit, but they marry the 901 issue and the 701 issue together. I don't think this court has really addressed this precise question, but in any event, authenticity under 901 is a separate question from the 701B question. Do you have a case directly on point that holds in your favor that it should have been excluded? Well, the vast majority of those cases, I will acknowledge, end up running in the government's favor in terms of the evidence being admissible. Right. Well, what runs in your favor? Well, we rely pretty heavily on the rationale that's articulated in Freeman and Garcia in those cases, and I understand that there's a distinction there because we are talking about cases both in Freeman and Garcia and those lines of cases, agents summarizing sort of voluminous testimony from the record, and giving— Do you have a comparing of handwriting case that's in your favor? I don't, Your Honor. I don't. But I still think that the logic from Freeman and Garcia applies with equal force to the analysis here. One of the basic points of all of those cases is that the government is not allowed to spoon-feed the jury its interpretation of the evidence. The jury is capable in many instances of reaching its own conclusions about that. You know, here, though, don't you also have a problem? I mean, on a couple of these letters, the other letters, not the one to the congresswoman, had your client's DNA and fingerprints were found on two of the other letters, right? That's correct, Your Honor. I mean, there's other—you know, you're claiming error that's reversible and all, but I mean, there's other proof that connects your client with this offense other than just the witnesses saying, well, these letters look like the other letters that I've received from this man in the past. I recognize that we've got a pretty high burden both on the harmless error question and then as to the issue of the lay witnesses, an unpreserved error. But having said that, this wasn't necessarily a slam-dunk case for the government. I acknowledge there was testimony that was difficult. Getting in that area, isn't it? There was testimony that was certainly difficult for the defense. Maybe the reason these cases come out the way they do is it's just, quote, lay opinion. And I get the risks of that, but your idea of, well, the jurors had this. They can figure this out for themselves. I think that actually kind of neutralizes these risks a little bit because defense counsel can say, hey, listen, don't worry about what they say. You've got the letters. They are no more expert at determining whether these letters are from the same person than you are. So it seems to me that kind of neutralizes the risks you're talking about and I think makes it seem less like spoon feeding because defense counsel just says, hey, you read the letters. Look at them. They're different. What do these people know that you don't know? And Judge Sutton, I understand that perspective. I would respectfully disagree just based on the fact that, number one, the jury is immediately instructed that arguments are not evidence and the evidence that the jury actually received in this case, which was the testimony from the lay witnesses, went right to the heart of it. This is Mr. Harris's handwriting. There is no question about it. We can identify him. And because identity of the writer was so closely intertwined with the identity of the mailer of the letters, it embraces that ultimate issue. And so as useful as counsel's argument would be and as necessary would be, frankly, to combat that evidence, I don't know that it would be enough to counteract the actual testimony from live witnesses who do have some personal familiarity with the defendant. Unless Your Honor or Your Honors have any other questions, I'll reserve the balance of my time for rebuttal. That's fine. Thank you. Morning. Morning. May it please the Court, Andrew Goetz for the United States. No court of appeals has adopted the type of broad categorical prohibition on handwriting identification testimony by lay witnesses that the defendant now proposes here. And even if this Court were to find that... But what was the value added of these witnesses, given that the letters are there in front of the jurors and these were lay people, not experts? So what was the value added? The value added is two things, Judge Sutton, and it stems both from the familiarity requirement in Rule 901B2. The first is the additional time that the agent would have spent with this handwriting, time that the jury cannot replicate at trial. The agent had obtained the letters, had reviewed them for over a week, had sent them to the lab. That's the type of time encompassed by the familiarity. Reviewed them for over a week is a bit of an exaggeration. I'm going to guess that wasn't an eight-hour-a-day situation. Maybe if I look at it one more time, I'll see something. Right. I was being unartful with the way I phrased that. He had them for over a week, but he had them during that week was when he was investigating the case. So he did have more time with those letters than the jury did, and it appears that he reviewed them more than the jury did. He also had access to letters that the jury did not. Only four of the threatening letters, the charge letter and three of the others, were introduced into evidence. There were other threatening letters, if you look at the testimony of Cynthia Hiller, that were not before the jury and, frankly, could not be put before the jury or we'd have a 403 problem. So the agent here had letters that the jury did not have. That was what he based his familiarity on, and notably that's what any witness relying on familiarity would base his or her testimony on. That's what familiarity comes from. It comes from time. It comes from access to writing that the jury would not have. For instance, a co-worker, under defendant's interpretation of the rules, that co-worker could not testify and identify the defendant's handwriting unless all of those pieces of evidence, every piece of writing the co-worker was relying on, was introduced into evidence as well. That's not what the rule says. The rule says familiarity. Further, this was not a case where the defendant objected to this testimony. One of the reasons why the foundation here is not quite as clear as, for instance, Scott cements some of the cases that we cited in our brief is because there was no objection. There was no prompting of the prosecutor to lay that foundation and provide more of the details that would have made this court's review easier. That also affects the harmlessness argument. Judge Gilman, as you pointed out, of the four letters that were introduced, three of those had forensic evidence tying those letters to the defendant. Two of them had DNA evidence. We had DNA evidence here. DNA evidence is pretty strong evidence. A third had fingerprint evidence. When you have fingerprint evidence and DNA evidence on letters that mirror the charged letter, that's very strong evidence that the defendant, in fact, authored the letter that was charged, authored the letter that was sent to Congresswoman Miller. We also had timing. These letters started appearing in Cynthia Hiller's mailbox very soon after. I don't think she gave a precise date, but very soon after she spurned the defendant's advances. All of the letters tried to frame her. All of them listed her return address. All the letters were written in very, very distinct handwriting. Those letters are part of the electronic record we've cited to them in our brief. They are very distinct handwriting. This was not a case where the agent's testimony would have made a difference to the jury's verdict, particularly under the plain-error standard of review that applies here, where it is the defendant's burden to show prejudice. Agent Herrera, is that her name? It's Juan Herrera, yes. It's a him, I believe. I don't know. I am happy to answer any further questions if the court has any. If not. If not, you don't feel obligated to fill up the time. In conclusion, the district court's judgment should be affirmed. Thank you. Thank you. Your Honors, my only additional argument would be that Agent Herrera's testimony in particular runs exactly into the kind of problem that the court flagged in Freeman, and that is he did, in the line of questioning with the prosecutor, reference not just things that he did. He didn't reference specific things that he had done to gain familiarity. He said, it was based on my investigation, which, of course, makes reference to facts, evidence, issues that may not have been accessible, were clearly not accessible to the jury, and it sort of cloaks his testimony with authority that suggests that the jury is not competent of making its own determination, and that's really exactly the problem. So we would ask the court, in light of Freeman and the other authorities cited in our brief, to remand the matter and direct the district court to order a new trial. Thank you very much. Thank you. The case is submitted, and you may call the next case.